The John Ii Estate, Limited, a corporation, filed an application in the land court to register its title to *Page 814 
practically the entire ahupuaa of Waipio as well as to a large number of kuleanas and grants situated within the outer boundaries of the ahupuaa and also to certain kuleanas situated at Waikele. With the application the applicant filed an abstract of title comprising about six thousand pages and also filed more than one hundred original documents which were not recorded but were deemed to affect portions of the lands included in the application. The application was referred to an examiner. Subsequently the examiner reported adversely to the applicant and still later filed a supplementary report declaring that he had found on the records 152 other documents which were not referred to in the applicant's abstract and which the examiner believed should have been included in the abstract. To the supplemental report were annexed abstracts of these 152 documents. The examiner stated in this supplemental report, "None of the documents discovered by me alter the status of the title of the various kuleanas as set forth in my first report." The applicant moved to strike from the supplemental report the abstracts of the 152 documents and also moved that the statutory fees of two dollars for every document affecting the title not included in the abstract, taxable against the applicant under the provisions of section 3300, R.L. 1925, should not be taxed against the applicant in this case for these 152 documents. The judge of the land court thereupon reserved for the consideration and decision of this court certain questions of law presented by these motions.
It appears that the 152 documents in question, all being of record in the office of the registrar of conveyances, may be grouped into the following classes: (1) a few deeds by various individuals purporting to convey their interests generally, whatever those interests might be, in the lands sought to be registered; (2) leases of *Page 815 
various portions of the land which had expired prior to the filing of the application for registration; (3) mortgages of leasehold interests and releases of these mortgages; (4) mortgages of leasehold interests with no recorded releases, the leases themselves having expired by their own terms prior to the filing of the application; (5) chattel mortgages of crops to be grown upon leased land, the mortgages not being released of record but the leases having expired before the filing of the application and the crops having been taken off years ago; (6) assignments of leases which had expired before the application; (7) other transactions dealing with or under leases which expired prior to the application.
Section 3300, R.L. 1925, entitled "Fees for Registration," this section being a part of chapter 186 relating to land registration, provides that "the fees payable under this chapter shall be as follows: * * * for each instrument affecting a title not reported in applicant's filed abstract of title, two dollars." This section is understood by all concerned to prescribe the fees which are chargeable against the applicant and in favor of the Territory in the instances specified. The question reserved by the land court is, in effect, whether and to what extent these fees of two dollars each may be charged against the applicant in the cases of the 152 documents above mentioned.
On behalf of the applicant the contention is that the statutory expression above quoted "for each instrument affecting a title" means an instrument which affects the title at the date of the filing of the application for registration. The examiner, on the other hand, contends that the expression means each instrument which affected the title at the time that it was recorded, even though it did not affect the title at the time of the application.
The theory and the purpose of the land registration statute is that an owner of land may, upon application *Page 816 
to the land court, have his title registered in and by that court and that thereafter the Territory will in effect guarantee to the applicant the title which through its agent, the land court, it has accepted for registration. The procedure prescribed requiring, first (§ 3215, R.L. 1925), that the applicant shall file "with the application a complete abstract of title of the land," next, a reference to an examiner whose duty it is to (§ 3219) "search the records and investigate all facts stated in the application or otherwise brought to his notice and file in the case a report thereon, concluding with a certificate of his opinion upon the title" and, lastly, under certain circumstances a trial of the title, is intended to provide the means for discovery of flaws in the title in order that the land court may not be led unwittingly to register and to guarantee a title which is defective. The "complete abstract of title," required by section 3215 imports a complete, not a partial, synopsis of all recorded instruments, judgments, etc., which bear upon or relate to the history and ultimately the present status of the title. In so far as the purposes of such an abstract are concerned it is quite as important that instruments and judgments which relate favorably to the title of the applicant be reported as that those which relate unfavorably to that title be reported. The requirement in section 3215 of a complete abstract serves to throw some light upon the meaning and intent of the clause immediately under consideration in section 3300, to-wit, "for each instrument affecting a title not reported in applicant's filed abstract of title." The legislature has not in the provision prescribed any particular period of time at which the instrument affected the title; nor has it limited the effect referred to either to one which is favorable to the claim of the applicant or to one which is unfavorable to that claim. If the instrument in any way, favorably or unfavorably, affects or affected the title and *Page 817 
if at any time, past or present, it affected or affects the title, then, if it is not reported by the applicant in his abstract and is reported by the examiner as a result of his search, the tax of two dollars accrues against the applicant.
The parties are agreed, and properly so, that the few deeds by various individuals purporting to convey their interests generally, whatever those interests might be, are instruments affecting the title within the meaning of section 3300. Releases of mortgages are not substantially different in their effect from these general conveyances or releases effectuated by the deeds just mentioned. By a release of a mortgage the mortgagee conveys or returns to the mortgagor all of the right, title and interest in the land which he received by the mortgage. It is of interest and importance to the land court to know that this claim which at one time was outstanding against the land by virtue of the mortgage has been released and reconveyed to the applicant. Such releases are instruments tending to strengthen the right of the applicant to a registered title. If such a recorded release were discovered by an examiner reciting the prior existence of an oral mortgage which by that release the mortgagee sought to cancel there could be no doubt, as it seems to us, that that release should be reported in the abstract, just as a general release or conveyance by a claimant who does not state in the instrument the nature of his claim should be reported. If releases of mortgages should be included in the abstract, as we think they should, the mortgages themselves should be likewise reported in the abstract, in order to make the history of the title complete. At one time the mortgages constituted encumbrances on the land. The report of each mortgage and of its subsequent release encourages the land court to register the title and strengthens the defense of the Territory in case it should later be sued for errors *Page 818 
or imperfections in the decree of registration.
Our answer to the reserved questions is that section 3300 contemplates and requires the payment by the applicant of a fee of two dollars for each and every instrument affecting the title not reported in the applicant's filed abstract, irrespective of the date when the instrument affected the title and irrespective of whether the instrument affected it favorably or adversely; and that therefore this provision of the section applies to the 152 instruments in question and to instruments of the general classes set forth in the specifications of the reserved questions.